[Cite as *Toledo v. Manning*, 2019-Ohio-3405.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Toledo                    Court of Appeals No. L-18-1210

    Appellee                                            Trial Court No. CRB-18-04567

v.

Richard Manning                                 **DECISION AND JUDGMENT**

    Appellant                                           Decided: August 23, 2019

* * * * *

David Toska, Chief Prosecutor, and Jimmie Jones, Assistant
Prosecutor, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Toledo Municipal Court which,

following a bench trial, found appellant guilty of assault. For the reasons set forth below,

this court affirms the judgment of the trial court.

{¶ 2} On April 14, 2018, Toledo police were dispatched to where appellant, Richard William Manning II, lived with his girlfriend in Toledo, Lucas County, Ohio. Later that day Officer Melvin Russell filed complaints charging appellant with two counts: (1) domestic violence, a violation of R.C. 2919.25(A), a first-degree misdemeanor pursuant to R.C. 2919.25(D)(2), and (2) assault, a violation of R.C. 2903.13(A), a first-degree misdemeanor pursuant to R.C. 2903.13(C)(1). The transcript of the August 16, 2018 bench trial is in the record.

{¶ 3} Officer Russell testified at the trial "it was a Code 3 weapons call involving a knife." Upon arrival at the location, Officer Russell's partner went to the front of the duplex, and Officer Russell when to the back. He saw the back door was open, entered the duplex, and began to walk up the stairwell when he found appellant's mother comforting the victim.

> Q: And as you approached them, can you describe their demeanor?
>
> A: As I was * * * climbing the steps, they were about a half a flight above. They were both sitting on the steps. [The victim] was crying, noticeably upset, appeared to have some minor swelling, bruising to the face and other parts of her body. Mr. Manning's mother was comforting her. She was making statements, before she even noticed that I was there, that he can't beat me like a man anymore.

{¶ 4} Officer Russell was the only witness to testify for appellee. On cross-examination, appellant, though his attorney, asked, "Officer Russell, did you see the

2.

altercation between [appellant] and [the victim]?" The witness responded, "No, I did not." Appellant did not further cross-examine the witness, and appellee's re-direct examination of the witness was brief:

Q: As to not seeing the altercation, did you see any evidence that there was an altercation?

A: Yes.

Q: And specifically, would that be the injuries?

A: Her injuries. The state of the house. The kitchen was pretty broken apart. Cabinet doors. Stuff like that.

Q: And then also the statements that she made to –

A: Yes.

Q: -- the other woman present? Thank you.

{¶ 5} Appellee then rested its case. Appellant immediately moved for a judgment of acquittal of both charges pursuant to Crim.R. 29(A). Specifically, appellant argued regarding Count 2, "no one saw the assault. The only thing was the view of the injuries. No causation of those injuries was ever determined that could be caused by [appellant]." Appellee responded that assault can be established by circumstantial evidence. The trial court granted appellant's motion for Count 1, R.C. 2912.25(A) domestic violence, but denied the motion for Count 2, R.C. 2903.13(A) assault.

3.

**{¶ 6}** Following the trial court's ruling, appellant then rested without introducing any evidence. After closing arguments by the parties, the trial court found appellant guilty of Count 2, assault.

**{¶ 7}** Sentencing occurred on September 6, 2018, and the hearing transcript is in the record. The trial court sentenced appellant, "Having been found guilty, the Court will sentence 180 days. They'll be suspended. You will be on one-year probation; no further offenses. No contact with victim, and during this time, you will take Batterer's Intervention Classes." The sentencing judgment entry was journalized on October 1, 2018.

**{¶ 8}** It is the trial court's October 1, 2018 journalized sentencing judgment entry from which appellant timely filed his appeal setting forth three assignments of error:

> I. The trial court committed prejudicial error by not granting the appellant's Criminal Rule 29 Motion made at the close of the City of Toledo's case.

> II. The trial court's finding of guilt was against the manifest weight of the evidence as the City of Toledo failed to prove appellant's guilt beyond a reasonable doubt.

> III. Ineffective assistance of counsel due to trial counsel's failure to object to the admission of hearsay evidence

4.

## I. Sufficiency of Evidence

{¶ 9} In support of his first assignment of error, appellant argued the trial court erred by denying his Crim.R. 29(A) motion for acquittal. Appellant argued there was insufficient evidence at trial with which to convict appellant of assault. First, appellant argued appellee "failed to put forth any evidence [the victim] suffered any injuries at the hands of Appellant." Second, he argued there was no evidence whether the "'disarray' [in the apartment] was the typical state of the apartment." Third, he argued the victim's statement was inadmissible hearsay evidence by the witness at trial. As a result, he argued, reasonable minds can differ as to appellant's guilt for assault.

{¶ 10} In response, appellee argued there was sufficient evidence for convicting appellant of assault. Appellee argued evidence for each element of assault was presented at trial.

{¶ 11} Appellant's acquittal motion was made pursuant to Crim.R. 29(A), which states, in part, "The court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the * * * complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Appellant's motion under Crim.R. 29(A) is governed by the same standard as a challenge to the sufficiency of evidence supporting a conviction at trial. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 12} The Ohio Supreme Court guides appellate courts reviewing a challenge to the sufficiency of evidence as follows:

5.

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." *Id.* at 273. Appellate courts do not evaluate the credibility of the evidence when determining its sufficiency because our role is to decide whether the evidence, if believed, can sustain the verdict as a matter of law. *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. All admissible evidence may be considered by the reviewing court on a claim of insufficient evidence. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 80.

{¶ 13} Sufficiency of evidence is a term of art for applying the legal standard to determine whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a

6.

verdict is a question of law." *Id.* "But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact. Nor does that consideration involve the court in weighing the evidence or passing upon its credibility." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 25, quoting *O'Day v. Webb*, 29 Ohio St.2d 215, 219, 280 N.E.2d 896 (1972). We review a question of law de novo. *State v. Baker*, 6th Dist. Wood No. WD-09-088, 2010-Ohio-4719, ¶ 21, citing Thompkins at 386.

### 1. Assault

{¶ 14} In order for appellant to be found guilty of assault pursuant to R.C. 2903.13(A) appellee must prove beyond a reasonable doubt that, "No person shall knowingly cause * * * physical harm to another * * *." R.C. 2901.05(A).

{¶ 15} Appellee's reasonable doubt burden is defined by statute.

> "Reasonable doubt" is present when the [triers of fact], after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would

7.

be willing to rely and act upon it in the most important of the person's own affairs.

R.C. 2901.05(E).

{¶ 16} Appellee could meet its burden at trial using circumstantial evidence. *Jenks*, 61 Ohio St.3d at 283, 574 N.E.2d 492.

Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*Id.* at paragraph one of the syllabus. "While inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts; and a series of facts and circumstances can be used as a basis for ultimate findings." *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293 (1990).

{¶ 17} The record shows that at the point of appellant's motion for acquittal, appellee had submitted one witnesses to direct and cross-examination. Through the witness's testimony in the record, the essential elements of assault were presented to the trier of fact.

{¶ 18} Officer Russell testified he responds "to the more serious offenses or allegations," and on April 14, 2018, he was dispatched to the duplex location because of

8.

"a Code 3 weapons call involving a knife." Present at the scene with Officer Russell were his partner, appellant, the victim, and appellant's mother. Officer Russell confidently identified appellant at trial as the person who assaulted the victim "from the incident that we're * * * referring to." Based on his investigation, Officer Russell described the relationship between appellant and the victim as "[a]t least roommates."

{¶ 19} Officer Russell further testified he personally saw the fresh injuries to the victim. He further testified there was still some concern at the scene for both officer and victim safety, and appellant was taken into custody.

Q: So at that point, there was still some concern for both officer and victim safety?

A: Yes.

Q: And you said you observed some injuries. Could you describe those injuries for us?

A: Injuries was (sic) – I think it was just small bruising on her face, scratches on her neck. I don't know if there was (sic) pictures of this or not, but – let's see. Swollen eyes, scratches, arms, necks; stuff like that.

Q: Okay. And after you observed this, what decision did you make, if any?

A: We talked to her, at that point, and his mother she gave a statement.

* * *

Q: Did you arrest the defendant, at that time, or were you involved with the arrest of the defendant at that time?

A: At the time the cuffs were placed on him? I believe, no. I think it was relayed on the radio, from me to my partner, he would be taken into custody.

Q: Were you involved with the transport of that defendant?

A: Yes.

### a. Identification

{¶ 20} For the first element of assault, appellee had the burden to prove beyond a reasonable doubt appellant was the person who violated R.C. 2903.13(A). Appellant argues the prosecution failed to sufficiently identify him as the person who caused the victim's injuries because the sole witness at trial did not personally see appellant injure the victim. However, under the totality of the circumstances, the direct and circumstantial evidence in the record identifying appellant as the person who assaulted the victim and caused her injuries could have been believed by the average mind of a trier of fact.

{¶ 21} "'[T]he focus under the "totality of the circumstances" approach is upon the reliability of the identification, *not* the identification procedures. (Emphasis sic.)'" *State v. Davie*, 80 Ohio St.3d 311, 321, 686 N.E.2d 245 (1997), quoting *State v. Jells*, 53 Ohio St.3d 22, 27, 559 N.E.2d 464 (1990). Under the totality of the circumstances,

10.

nothing in the record indicates that Officer Russell's identification of appellant was unreliable. *See id.* at 322.

{¶ 22} The evidence in the record included the unrebutted testimony the victim was appellant's girlfriend and roommate on April 14, 2018, and the victim had recent swelling on her face and scratches on her neck and arms. Also, the unrebutted testimony included appellant was the only other man at the scene when law enforcement arrived. The record also included the trial court's sentence, which appellant did not specifically appeal. The trial court ordered appellant to have no contact with the victim and to take Batterer's Intervention Classes. The trial court was the trier of fact. The trial court's sentencing decision indicates the trier of fact believed appellant was the person who caused the victim's injuries.

{¶ 23} We find there was sufficient evidence in the record, if believed by the trier of fact, to sustain appellee's burden for the first element of assault.

**b. Intent**

{¶ 24} For the second element of assault, appellee had the burden to prove appellant acted knowingly. Appellant argues the prosecution failed to prove he knowingly caused the victim's injuries because no causal link was established. However, the direct and circumstantial evidence in the record that appellant knowingly caused physical harm to the victim could have been believed by the average mind of a trier of fact.

11.

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 25} Relevant circumstantial evidence may be used to infer criminal intent. *Baker*, 6th Dist. Wood No. WD-09-088, 2010-Ohio-4719, at ¶ 24. Circumstantial evidence may also be used to infer a defendant acted knowingly, even if the result was not intended. *Id.* at ¶ 23. "Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *Id.*

{¶ 26} The victim did not testify at the trial. Officer Russell testified he and his partner were the first responders to the scene where the appellant and victim lived together. As he entered the rear of the duplex, and before his presence was known to the victim, he heard the victim making the statement to appellant's mother that "he can't beat me like a man anymore." Officer Russell testified the victim was sitting on the steps, crying, and noticeably upset with visible physical marks on her: swelling and bruising to

12.

the face and scratches to her neck and arms. Appellant's rebuttal to Officer Russell's testimony was the cross-examination question and answer that Officer Russell did not see the altercation between appellant and the victim at the time it occurred.

{¶ 27} Contrary to appellant's assertion, we do not find the trial court improperly relied on any hearsay statements in reaching its guilty decision. The trial court, as the trier of fact, is presumed to have considered "only the relevant, material, and competent evidence" in arriving at its judgment unless it affirmatively appears to the contrary. *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, 62 N.E.3d 153, ¶ 39. Here there is no showing in the record the presumption should not apply.

{¶ 28} We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 122. Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 29} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "But if a statement is offered for another purpose, then it is not hearsay and is admissible." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 169.

13.

**{¶ 30}** We find Officer Russell's testimony about the victim's statement to appellant's mother that appellant, once again, beat her "like a man" was hearsay. Nevertheless, the victim's statement was admissible hearsay under the excited utterance exception.

**{¶ 31}** An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2). The admissibility of an excited utterance statement is subject to a four-part test:

(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement of declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and

(d) that the declarant had an opportunity to observe personally the

matters asserted in his statement or declaration. (Emphasis sic.)

*State v. Doogs*, 6th Dist. Wood Nos. WD-15-073, WD-16-027, 2017-Ohio-6914, ¶ 56,

quoting *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166.

{¶ 32} According to the record, the victim was still under the stress of the assault when Officer Russell personally observed her injuries and the disarray within the apartment she shared with appellant and when he heard her statement. Officer Russell's unrebutted testimony was he personally observed, "Her injuries. The state of the house. The kitchen was pretty broken apart. Cabinet doors. Stuff like that." The direct and circumstantial evidence in the record point to the victim suffered from a recent event startling enough to produce her excited utterance. Officer Russell's unrebutted further testimony was he personally observed the victim was crying and noticeably upset. The overheard victim's statement that "he" would not beat her like a man anymore was an unreflective and sincere expression of her actual impressions and beliefs at the time, indicating her statement to be spontaneous and unreflective. We find Officer Russell's testimony of personally hearing the victim's statement under the stress of the assault was admissible as an excited utterance pursuant to Evid.R. 803(2). *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 216.

{¶ 33} We further find there was sufficient evidence in the record, if believed by the trier of fact, to sustain appellee's burden for the second element of assault.

15.

## c. Injury

{¶ 34} For the third element of assault, appellee had the burden to prove appellant caused the victim physical harm. "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 35} The unrebutted testimony in the record included the victim had suffered physical harm: "minor swelling, bruising to the face and other parts of her body," "small bruising on her face, scratches on her neck," and "[s]wollen eyes, scratches, arms, necks; stuff like that." Appellant argues the prosecution failed to prove either the victim's injuries were recent or that the disarray of the apartment was not the normal condition of it. However, R.C. 2901.01(A)(3) explicitly states any injury shown is "regardless of gravity or duration." The direct and circumstantial evidence in the record the victim suffered physical harm by appellant could have been believed by the average mind of a trier of fact.

{¶ 36} We find there was sufficient evidence in the record, if believed by the trier of fact, to sustain appellee's burden for the third element of assault.

{¶ 37} We reviewed the record in this case. We find that after reviewing all the admissible evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt the essential elements appellant was guilty of the crime of assault. We find that reasonable minds could reach the same

16.

conclusion as reached by the trier of fact. We further find the evidence in the record is legally sufficient to support the verdict as a matter of law.

{¶ 38} Appellant's first assignment of error is not well-taken.

## II. Manifest Weight of the Evidence

{¶ 39} In support of his second assignment of error, appellant argued his conviction was against the manifest weight of the evidence because "the evidence did not support two elements of the crime." Appellant argued the victim's injuries were not established to be the result of an assault by appellant or that they were recent. Appellant further argued he was not "sufficiently identified as the individual who caused [the victim's] injuries." Appellant further argued appellee's sole witness admitted he did not observe the alleged altercation between appellant and the victim.

{¶ 40} In response, appellee argued the trial court did not lose its way. Appellee argued it presented evidence of appellant's guilt beyond a reasonable doubt. Appellee further argued it presented evidence of the victim's injuries, the disarray of their shared home, the upset nature of the victim, "[a]nd Appellee presented evidence of the victim's statement that the Appellant assaulted her." Appellee argued the trial court "found the witness's testimony credible."

{¶ 41} A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins*, 78 Ohio St.3d at 387, 678

17.

N.E.2d 541 (the weight of credible evidence is not a question of mathematics; rather its effect in inducing belief). "A verdict can be against the manifest weight of the evidence even though legally sufficient evidence supports it." *Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, at ¶ 140.

{¶ 42} We must "extend special deference to the [trier of fact's] credibility determinations given that it is the [trier of fact] who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor." *State v. Beavogui*, 6th Dist. Wood No. WD-17-009, 2018-Ohio-2432, ¶ 55. The testimony of the sole witness in this matter, if believed by the trial court, is sufficient to support a conviction because witness credibility was for the trial court to determine. *State v. Bartulica*, 6th Dist. Erie No. E-17-065, 2018-Ohio-3978, ¶ 43. Where the state's evidence is unrebutted, there are few, if any, conflicts for the trier of fact to resolve. *Myers* at ¶ 141.

{¶ 43} In this case the trial court judge was the trier of fact. It is well established that the trier of fact, whether in a civil or criminal matter, has the primary duty to decide what weight should be given to the testimony of any witness. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. "A reviewing court may not reverse a judgment of conviction in a criminal case in a trial court, where the record shows that a verdict of guilty was returned by [the trier of fact] on sufficient

18.

evidence and where no prejudicial error occurred in the actual trial of the case * * *." *Id.* at paragraph two of the syllabus.

{¶ 44} This court has repeatedly stated that in determining whether a verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way to create such a manifest miscarriage of justice as to require a new trial. *State v. Reynolds*, 6th Dist. Lucas No. L-16-1021, 2017-Ohio-1478, ¶ 47. A conviction will be overturned only in exceptional cases. *Id.* We do not find appellant provided evidentiary support for this assignment of error to indicate this was an exceptional case.

{¶ 45} We reviewed the entire record and find a greater amount of credible direct and circumstantial evidence was admitted at trial for the trial court to reach its decision of appellant's guilt for assault. Despite appellant's assertions to the contrary, we do not find the trial court clearly lost its way to create such a manifest miscarriage of justice as to require a new trial.

{¶ 46} Appellant's second assignment of error is not well-taken.

### III. Ineffective Assistance of Counsel

{¶ 47} In support of his third assignment of error, appellant argued his trial counsel was ineffective because he did not object to Officer Russell's testimony of the victim's "statement that 'he can't beat me like a man anymore.'" Appellant argued his trial counsel should have objected to the admission of that statement into evidence

because no exceptions to hearsay exist. Appellant concluded the record "clearly indicates" the trial court relied on the police officer's statements in finding appellant guilty of assault, and the police officer's statements were appellee's only evidence on the essential elements of the alleged assault.

{¶ 48} In response, appellee argued appellant did not receive ineffective assistance of counsel at trial. Appellee conceded the police officer's statement of the victim's statement was hearsay. However, appellee further argued the hearsay was admissible as an excited utterance. Appellee concluded that even if appellant's trial counsel had objected to the admission of the hearsay statement, the trial court would have overruled the objection as an excited utterance hearsay exception.

{¶ 49} An ineffective assistance of counsel claim must overcome the strong presumption that a properly licensed Ohio lawyer is competent. *State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 95. The record does not show appellant questioned the licensure of his trial counsel, so his competence was presumed.

{¶ 50} To overcome this presumption of competence, appellant had the burden in an ineffective assistance of counsel claim to show both: (1) deficient performance by his trial counsel below an objective standard of reasonable representation, and (2) a reasonable probability of prejudice that but for his trial counsel's errors, he would not have been convicted of assault. *Id.*

{¶ 51} Appellant argues his attorney's failure to object to the admissibility of evidence at trial deprived him of effective assistance of counsel. However, where, as in

20.

this matter, the evidence was admissible, appellant "was not deprived of effective assistance of counsel when his attorneys failed to object." *Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, at ¶ 226. As a result, appellant fails to meet his burden that his trial counsel's performance was below an objective standard of reasonable representation and his burden of a reasonable probability of prejudice that but for his trial counsel's errors, he would not have been convicted of assault.

**{¶ 52}** As a separate matter, where appellant did not object on the record to the admissibility of Officer Russell's testimony regarding the victim's statement, he waived all but plain error. *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, at ¶ 74; *see Risner v. Ohio Department of Natural Resources*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 26-27.

**{¶ 53}** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). A finding of plain error requires three determinations: (1) an actual error, i.e., a deviation from the legal rule, (2) the error was plain within the meaning of Crim.R. 52(B), i.e., an obvious defect in the trial proceedings, and (3) the error must have affected substantial rights, i.e., affected the outcome of the trial. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16. The burden is on the party asserting plain error. *Id.* at ¶ 17. "Plain error does not exist unless it can be said that but for the error, the outcome below would clearly have been otherwise." *Jells*, 53 Ohio St.3d at 24, 559 N.E.2d 464, citing

21.

*State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus and *State v. Greer*, 39 Ohio St.3d 236, 252, 530 N.E.2d 382 (1988).

{¶ 54} The Supreme Court of Ohio has instructed us to take notice of the Crim.R. 52(B) plain error doctrine "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62, quoting *Long* at 97. The extreme caution is necessary for appellate courts, which normally should not consider questions on which the lower court has not ruled, to consider on appeal any issues not first raised before the trial court. *Long* at 95-96. Nevertheless, we reviewed the entire record and find appellant did not meet his burden to show there was an actual and obvious plain error from which he clearly would not have been convicted of assault.

{¶ 55} We find the trial court did not commit plain error when it admitted excited utterance hearsay testimony without objection. Having previously found the excited utterance exception to hearsay to apply in this matter and the trial court did not abuse its discretion in admitting the hearsay testimony, we do not find appellant's trial counsel was ineffective at trial. Appellant was not prejudiced by his trial counsel's performance because appellant's evidentiary support for this assignment of error was admissible at trial.

{¶ 56} Appellant's third assignment of error is not well-taken.

22.

## IV. Conclusion

{¶ 57} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                   _____

                                                                  JUDGE

Thomas J. Osowik, J.

                                  _____

Christine E. Mayle, P.J.                                     JUDGE

CONCUR.

                                  _____

                                                                  JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.