[Cite as *State v. Smallwood*, 2025-Ohio-1001.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

State of Ohio                                           Court of Appeals No.   WM-24-001
                                                                              WM-24-002
        Appellee                                                WM-24-003
                                                                              WM-24-004

v.                                                     Trial Court No.  22CR00074
                                                                        23CR00024
Jochua A.Z. Smallwood                                                   23CR00134
                                                                        23CR00167
        Appellant

**<u>DECISION AND JUDGMENT</u>**

Decided:  March 21, 2025

* * * * *

Katherine J. Zartman, Williams County Prosecuting Attorney,
for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal of a December 19, 2023 judgment of the Williams County

Court of Common Pleas, convicting appellant, following a consolidated bench trial, on

one count of attempted murder, in violation of R.C. 2903.02, a felony of the first degree,

one count of abduction, in violation of R.C. 2905.02, a felony of the third degree, one

count of felonious assault, in violation of R.C. 2903.11, a felony of the second degree, one count of domestic violence, in violation of R.C. 2919.25, a felony of the fourth degree, five counts of violation of a protection order, in violation of R.C. 2919.27, felonies of the fifth degree, one count of intimidation of a victim in a criminal case, in violation of R.C. 2921.04, a misdemeanor of the first degree, and with repeat violent offender specifications on the attempted murder and felonious assault counts, pursuant to R.C. 2919.27.

{¶ 2} On December 21, 2023, appellant was sentenced to a 24-year aggregate term of incarceration, with both parties stipulating to the merger of the attempted murder and felonious assault offenses into the attempted murder offense, as allied offenses of similar import, and, without objection from either party, none of the remaining offenses were merged at sentencing. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Jochua Smallwood, sets forth the following four assignments of error:

"A. The conviction for attempted murder was unsupported by sufficient evidence and was against the manifest weight of the evidence.

"B. The convictions for abduction and domestic violence should have been merged into the conviction for attempted murder.

"C. The trial court erred to appellant's prejudice by allowing evidence of other acts in violation of Evid.R. 404.

"D. Counsel rendered ineffective assistance [of counsel] in violation of the U.S. and Ohio Constitutions."

{¶ 4} The following undisputed facts are relevant to this appeal. This case arises from events occurring on May 4, 2022, between appellant and H.S., his then-girlfriend and the victim, with whom he lived in her home in a mobile home park in Pioneer.

{¶ 5} Appellant, as revealed by both the record and his own admissions while testifying at trial, possesses a considerable criminal history, including similar incidents, and is prone to recidivism.

{¶ 6} On May 4, 2022, H.S. returned home at approximately 6:30 a.m., after working the night shift, and went to sleep. Later that morning, appellant became extremely agitated when he discovered that H.S. had fallen asleep with a lit cigarette. After first admonishing H.S. on the cigarette issue, appellant then accused H.S. of cheating on him, and claimed that he had observed another man's semen in her underwear. Despite H.S. reassuring appellant that she had not been unfaithful, appellant then forcefully picked H.S. up off of the ground by her arms, carried her into the bedroom, threw her onto the bed, put his hands around her neck, and strangled her until she nearly lost consciousness.

{¶ 7} As she began to experience a blackout, H.S. escaped from appellant by kicking him in the testicles. H.S. ran into the bathroom, with appellant in immediate pursuit, after which appellant grabbed her by her hair, threw her into the bathtub, closed the door, locked it, and went into another part of the house. H.S. waited for several minutes, got up and out of the bathtub, went to the door, and discovered that appellant

had locked it.  Given the urgency of the circumstances, H.S. kicked open the door, fled the house, and ran to her sister's home, located three doors down, and called 9-1-1 for emergency assistance.

{¶ 8} In the interim, appellant fled the scene, driving recklessly at a high rate of speed, striking a telephone pole in the course of exiting the mobile home park, and went to his uncle's home.  Shortly thereafter, by his own admission, appellant then texted H.S. numerous times, acknowledging his accountability for the incident, and acknowledging that his actions would result in his return to prison.

{¶ 9} Following H.S.'s 9-1-1 call, law enforcement arrived at the scene, interviewed H.S., photographed her injuries, photographed the interior of her mobile home, and transported her to the emergency room for examination and treatment.

{¶ 10} Appellant was later arrested at his uncle's home and transported to the Corrections Center of Northwest Ohio ("CCNO").  While being held at CCNO awaiting trial, and after a protection order was issued against him on behalf of H.S., appellant both directly, and through third parties, contacted H.S. on numerous occasions, via text and telephone, as recorded by CCNO, and discouraged her from testifying against him.

{¶ 11} On May 17, 2022, appellant was indicted in case No. 22-CR-074 on one count of attempted murder, one count of abduction, one count of felonious assault, one count of domestic violence, and one count of violation of a protection order, along with a repeat violent offender specification, all offenses arising from the May 4, 2022 above-described events occurring at H.R.'s home.

{¶ 12} On September 21, 2022, and February 21, 2023, respectively, appellant was indicted in case Nos. 22-CR-167 and 23-CR-024, on four additional counts of violation of a protection order, and one count of intimidation of a victim in a criminal case, with these offenses arising from appellant's unlawful communications with H.R. while he was incarcerated at CCNO awaiting trial on the initial offenses.

{¶ 13} On October 6, 2022, the state filed a motion in limine to have the trial court determine the admissibility of prior bad acts; namely, appellant's past convictions of violence in multiple other Ohio counties, against separate victims, each of whom had likewise been appellant's girlfriend at the time of the offenses. On October 25, 2022, counsel for appellant filed a reply, objecting to the prior bad acts evidence on the basis of prejudice. On October 27, 2022, the state voluntarily withdrew the motion in limine. However, on January 11, 2023, subsequent to the state's voluntary withdrawal of the motion, appellant filed a notice of intent to claim self-defense, necessitating the state to renew the motion in limine regarding prior bad acts evidence in order to counter the self-defense claims.

{¶ 14} Appellant declined to reply to the renewed motion in limine, and did not request an oral hearing on the pending motion. On July 18, 2023, the trial court ruled that prior bad acts evidence would be conditionally permitted, on the restricted basis of "permissible purposes," and expressly held that any such evidence admitted at the pending bench trial would not be used, "to improperly infer that the defendant acted in conformity in this case with his prior acts."

{¶ 15} All cases were consolidated for trial. Appellant executed written waivers of the right to trial by jury on two occasions; on April 14, 2023, and again on September 6, 2023. Accordingly, on September 25, 2023, a three-day bench trial commenced, concluding on November 9, 2023.

{¶ 16} On December 4, 2023, appellant was found guilty on all counts. On December 21, 2023, appellant was sentenced to an aggregate 24-year term of incarceration. This appeal ensued.

{¶ 17} In the first assignment of error, appellant argues that the attempted murder conviction was not supported by sufficient evidence, and was against the manifest weight of the evidence. We do not concur.

{¶ 18} As set forth by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 44-45 (6th Dist.),

> Appellant challenges both the sufficiency and weight of the evidence. Sufficiency of evidence is a term of art for applying the legal standard to determine whether the evidence is legally sufficient to support the verdict as a matter of law. *Toledo v. Manning*, 2019-Ohio-3405, ¶ 13 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The test for sufficiency is one of adequacy, or whether the evidence, if believed, can sustain the verdict as a matter of law. *Manning* at ¶ 12, citing *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. The sufficiency standard applies to the prosecution's burden of production at trial. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26.
> The test of manifest weight of the evidence, on the other hand, applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Manning* at ¶ 41, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins* at 387, 678 N.E.2d 541. In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial

court's credibility determinations, and the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41-42, citing *Myers*, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 140-141.

{¶ 19} As applied to the instant case, we first note that appellant's sufficiency and manifest weight claim on appeal is restricted to the attempted murder conviction.

{¶ 20} R.C. 2903.02(A), Ohio's murder statute, establishes, in relevant part, "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy." Relatedly, R.C. 2923.02(A), Ohio's attempt statute, establishes, in relevant part, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 21} At trial, the state first called H.S., the victim, to testify to the trial court. H.S. testified that following a heated argument initiated by appellant on the morning of May 4, 2022, she decided that it would be best to take her gun to her father's home. H.S. testified, "I was going to take my gun out to my dad's house and [appellant] grabbed me by my throat and took the gun away from me * * * he grabbed the case away from me and told me I wasn't taking it."

{¶ 22} H.S. testified that appellant, after this incident, then drove her daughter to school and, while he was gone, she fell asleep with a lit cigarette. H.S. testified that appellant came home, became irate, and stated, "[W[hat the hell are you doing smoking [when going to sleep]?" H.S. testified that appellant then began, "[A]ccusing me of having semen [from another man] in my underwear and cheating on him, getting messages from other people. And he just picked me up by my arms and carried me back

to the bedroom * * * both hands on my throat, strangling me." H.S. testified that while being strangled around the neck by appellant, appellant yelled at her, "You're going to die today you fucking bitch." H.S. testified that she then began to blackout.

{¶ 23} H.S. next testified that, at this juncture, she kicked appellant in the testicles in order to escape, and then,

> I got up off the bed and ran into the bathroom to throw up [after being strangled]. And I threw up in the sink. And then [appellant] grabbed [me] by the back of my hair and [I] was thrown into my bathtub * * * [I later] ran toward my bedroom door to get out. And when I tried to open the door, the door wouldn't open. And I heard them say you're not getting out that door. And I said yeah I am and then I kicked the door as hard as I could. And I got out and * * * I ran to my sister's house * * * which is three trailers down.

{¶ 24} H.R. was then shown multiple photographs of her injuries taken by law enforcement and emergency medical providers. When asked to describe what she observed in the photographs, H.S. testified, "[B]ruises on my neck, scratches * * * redness that comes down my neck. Those are of the bruising underneath on my throat. That would be two days later [showing] where the bruises are getting darker."

{¶ 25} H.R. was next shown the transcripts of the text messages sent to her by appellant from his mobile phone, by his own admission, shortly after this incident. H.S. read aloud portions of appellant's texts to her, conveying, in relevant part, "[T]hey're coming to get me, baby I'm so sorry you ever had to meet me and I never meant for this [to happen]    * * * and it's all on me. I lose everything. You [H.R.]. Little foot [H.R.'s daughter]. My fucking family * * * I fucked it up * * * I tried so hard not to be the old me."

{¶ 26} The state next called Lt. Roberts of the Pioneer Police Department to testify. Roberts testified that he responded to an emergency call made by H.S. while on duty on May 4, 2022. Upon arrival, Roberts testified,

> I approached the trailer, knocked on the door. Door opens up, [H.S.] was the one who opened it. She was crying, upset, very distraught * * * [H.S. stated] he tried to kill me * * * [appellant] was strangling me * * * I noticed bruising along her jawline and on her neck. She again stated about being strangled * * * I grabbed my flashlight and I turn it on above her head to see her eyes, to see if I might have seen any petechiae. I asked her to kind of pull her ear forward so I could look behind the ear. And I asked her to pull her bottom lip down * * * because petechiae can be found inside the lip * * * the capillary that is right close to the skin, when that bursts it's a symbol of * * * strangulation * * * I observed [petechiae] inside her bottom lip.

{¶ 27} Roberts proceeded to testify in detail regarding his interview of H.S., photographing her injuries, and appellant's refusal to give him a statement upon being located and arrested at his uncle's home. Roberts testified that while transporting appellant to CCNO, appellant initiated conversation regarding the incident, during which he attempted to attribute blame upon H.S., unilaterally claiming that the incident occurred because he was attempting to save H.S. from suicidal ideations. When Roberts then inquired in response to appellant's claims, "[W]hy [did you] put your hands on [H.R.'s] neck and strangle her?" Appellant did not deny strangling H.R., and simply gave no reply.

{¶ 28} The state next called Sharla Young, a forensic nurse and the coordinator for the Sexual Assault Response Team ("SART") clinic of Northwest Ohio to testify. Young testified in detail regarding her extensive professional experience, including specifically treating strangulation victims, having treated approximately 50 such victims. Young

explained and described the various forms of strangulation, including the manual strangulation by the hands form of strangulation that occurred in this case, and the symptoms of same.

{¶ 29} Young next testified that she reviewed the police reports, police photographs, medical records, and medical photographs. In describing the various photographic evidence admitted in this case, Young testified,

> You can see on her chest, and the neck that the redness is becoming more apparent. That's what I would term venous congestion * * * I see the oval-shaped bruise right here and then this is some redness which I would [also] term venous congestion. And then on the side again we have that bruise and then red bruises, a bit of abrasion it looks like here and then that redness * * * [I]t's showing the progression of the bruises underneath her jaw * * * I understand she went to the Montpelier hospital * * * [their] assessment * * * body stiffness and pain, sore throat, neck pain, strangled the day before, abuser grabbed her by the neck and held her up, and being strangled again * * * these round bruises are changing colors. And an abrasion up here. This is the lower chest, it is still red.

{¶ 30} When asked if any of the photographs reflected appellant's thumbprints, as inflicted on H.R. during the manual strangulation around her neck with appellant's hands, Young replied, "*Yes, we call that patterned bruising.*" (Emphasis added). The state rested.

{¶ 31} The defense first called to testify Dr. Daniel Spitz, a forensic pathologist, to tesitfy. Spitz initially hedged regarding the evidence of manual strangulation of H.R., testifying, "The thumbs were next to her trachea and then the fingers were on the sides of the neck. So I don't necessarily, it doesn't necessarily indicate that these are thumb, thumb related injuries, but I wouldn't exclude that there was trauma in the form of some type of impact or contact with the neck." However, upon cross, Spitz ultimately

acknowledged, "*Well I would agree that there was a period of trauma caused by hands on the neck*."  (Emphasis added).

{¶ 32} The defense next called appellant to testify on his own behalf.  In testifying on the circumstances of first meeting H.R., appellant testified, "I was working for a company called Riefle's in Pioneer, Ohio.  [I] tried to add a cute girl at work [to my social media friends] and mistakenly added [H.R.] on Facebook and it progressed from there."

{¶ 33} Appellant voluntarily offered on direct examination, "*I've made some mistakes in the past that I wasn't, I didn't want to repeat.  I've been locked up quite a bit * * * parole had just violated me because of my ex-fiancé [K.S.], that [resulted in] two and a half years of incarceration*."  (Emphasis added).

{¶ 34} In describing the day of the incident, appellant testified, "I like to live stream.  I like [the] platform plenty of fish.  I like attention.  [H.S.] had some insecurity about that because plenty of fish is a dating app * * * All I did was grab her by her wrist."

{¶ 35} Appellant further testified,

> Ohio PRC is very strict on guns.  I did six months in prison for posting a meme of SpongeBob getting off a recliner with a pistol in his hand[,] that said women mess with your emotions and you know where they live * * * I'm fresh out of prison less than two months, I don't have options.  I don't have enough resources to [live] on my own * * * [I] grabbed [H.R.], pushed her against the wall.

{¶ 36} While appellant acknowledged assaulting H.R. at trial, he denied strangling her, contrary to the testimonial evidence, photographic evidence, and medical evidence.

The defense rested. Appellant was convicted on all counts, including, as pertains to the first assignment of error, attempted murder.

{¶ 37} In applying the above-discussed sufficiency and manifest weight principles to the record of evidence in this case, the record reflects that considerable evidence was presented at trial, through the testimony of the victim, the responding law enforcement officers, the treating medical personnel, the expert witnesses, and as bolstered by their corresponding reports and photographs, that on May 4, 2022, appellant grabbed H.R. by her arms, lifted her up, threw her on the bed and strangled her around the neck with his hands until she nearly blacked out, and then, after H.R. kicked appellant in the testicles and fled into the adjacent bathroom, appellant chased her into the bathroom, grabbed her by her hair, threw her into the bathtub, and locked her inside. Only upon forcibly kicking the door open, was H.R. able to escape and call 9-1-1.

{¶ 38} We find ample evidence in the record showing that the evidence, if believed, was sufficient to sustain the conviction of attempted murder, via strangulation by hands around the neck. The evidence clearly showed that appellant purposely engaged in conduct that, if successful, would have caused H.S.'s death. The state satisfied the burden of production. Likewise, we find that the bulk of the evidence in the record weighed in favor of sustaining the conviction of attempted murder, and was not against the manifest weight of the evidence. The state satisfied the burden of persuasion. Wherefore, we find appellant's first assignment of error not well-taken.

{¶ 39} In appellant's second assignment of error, appellant argues that the trial court erred in not merging the abduction and domestic violence offenses with the

attempted murder offense, as allied offenses of similar import for sentencing purposes. With the consent of both parties, the felonious assault offense was merged with the attempted murder offense, as an allied of similar import for sentencing purposes.

{¶ 40} We first reiterate that appellant consented at sentencing to the felonious assault offense being the only offense to be merged with the attempted murder offense, as an allied offense of similar import. Appellant did not object to the abduction and domestic violence offenses not being merged with the attempted murder offense. Accordingly, the defendant waived all but plain error. *State v. Knuff*, 2024-Ohio-902 ¶ 218.

{¶ 41} As held by this court in *State v. Scott*, 2024-Ohio-5849, ¶ 84 (6th Dist.),

> R.C. 2941.25 prohibits multiple convictions for allied offenses of similar import arising from the same conduct. *State v. White*, 2021-Ohio-335, ¶ 8 (6th Dist.). To determine whether multiple convictions constitute allied offenses, the court must address three questions: (1) did the offenses involve either separate victims or separate and identifiable harm, (2) were the offenses committed separately, and (3) were the offenses committed with separate animus? *Id*., quoting *State v. Ruff*, 2015-Ohio-995, ¶ 25. An affirmative answer to any of the above will permit separate convictions. *Id*., quoting *State v. Tellis*, 2020-Ohio-6982, ¶ 74 (6th Dist.).

{¶ 42} As relates to the abduction offense, R.C. 2905.02(A)(2) establishes, in relevant part, "No person, without privilege to do so, shall knowingly do any of the following: By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear."

{¶ 43} As relates to the domestic violence offense, R.C. 2919.25(A) establishes, in relevant part, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 44} Regarding the abduction conviction, the record shows that after strangling H.R. by putting his hands around her neck, culminating in H.R. kicking him in the testicles to escape, appellant chased H.R. into the bathroom and then threw her into the bathtub, shut, locked, and blocked the door, in an effort to prevent her from leaving. The record shows that as H.R. first attempted to open the door, appellant yelled to her from the other side that she was not going to get out. The record shows that in order to flee and seek help, H.R. had to forcibly kick open the door open, and then make her escape from her home.

{¶ 45} Regarding the domestic violence conviction, the record shows that prior to strangling H.R. by putting his hands around her neck, appellant first grabbed her by her arms, carried her into the bedroom, and threw her onto the bed.

{¶ 46} Accordingly, the record shows that the abduction and domestic violence offenses were each committed separately, at separate times, from the manual strangulation constituting the attempted murder offense. Thus, we find that although the victim was the same in the offenses, the record shows that the offenses were committed separately, and with separate harm.

{¶ 47} Pursuant to *Ruff* and *Scott*, we find that the abduction and domestic violence offenses were not allied offenses of similar import with the attempted murder offense. We find appellant's second assignment of error not well-taken.

{¶ 48} In appellant's third assignment of error, appellant argues that the trial court erred in the admission of prior bad acts evidence, other than the admission of certified copies of the prior convictions. We are not convinced.

**{¶ 49}** As held by this court in *State v. Alexander*, 2023-Ohio-2708, ¶ 66 (6th Dist.),

> Other acts evidence is addressed under Evid.R. 404(B)(1), which precludes admission of evidence of other acts to prove the character trait in order to demonstrate conduct in conformity with that trait. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶16 * * * *However, pursuant to Evid.R. 404(B)(2), such evidence may be admissible to prove* motive, opportunity, *intent*, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. (Emphasis added).

**{¶ 50}** In conjunction, as appellant failed to object to the now disputed prior bad acts evidence, as held by this court in *State v. Farris*, 2021-Ohio-2135, ¶ 7 (6th Dist.), "Because he failed to object, appellant has waived all but plain error review."

**{¶ 51}** The record shows that the state initially, voluntarily withdrew its motion in limine regarding the prior bad acts evidence. Only upon appellant filing a notice of self-defense subsequent to the state's withdrawal of the motion in limine, did it become necessary for the state to renew the motion in limine, in order to counter appellant's self-defense claims. Appellant declined to reply to the renewed motion in limine, and declined to request an oral hearing on it.

**{¶ 52}** In addition, the record shows that the trial court's motion in limine ruling, in conformity with Evid.R. 404(B), expressly limited prior bad acts evidence to "permissible purposes" and affirmed that it would [in the ensuing bench trial], "not use the evidence to improperly infer that the defendant acted in conformity in this case with his prior acts."

**{¶ 53}** Lastly, because appellant elected to pursue a claim of self-defense, unilaterally claiming that H.R. demonstrated suicidal ideations and that his physical acts

against her actually were done to prevent her from self-harm, appellant put "intent" at issue, placing the disputed prior bad acts evidence expressly within the Evid.R. 404(B)(2) admissibility exceptions.

{¶ 54} Like the appellant in *State v. Nicholson*, 2024-Ohio-604, 218-219, *reconsideration denied*, 2024-Ohio-1577, *cert. denied*, 145 S.Ct. 447 (2024), the challenged evidence's relevance to the state's burden to prove Smallwood's intent cannot be overstated. Inasmuch as Smallwood claimed he physically assaulted the victim in order to somehow rescue her from her own acts of self-harm, the testimonies of witnesses to prior acts were directly relevant in order to rebut that claim. Moreover, Smallwood testified that he had pled guilty in these prior acts, but proclaimed his innocence in the instant case, which placed his intent into dispute and permitted the introduction of the other-acts evidence for non-propensity purposes. The probative value of this evidence was strong, and the trial court acted well within its discretion in admitting the evidence. In sum, the evidence of Smallwood's prior threats and physical violence was properly admitted at trial.

{¶ 55} Accordingly, we find that appellant failed to demonstrate that the trial court committed plain error in permitting the prior bad acts evidence, via a motion in limine ruling restricting it to permissible purposes, such as intent. We find appellant's third assignment of error not well-taken.

{¶ 56} In appellant's fourth assignment of error, appellant argues ineffective assistance of counsel. Specifically, appellant argues that trial counsel was ineffective in failing to request that the abduction and domestic violence offenses be merged into the

attempted murder offense, as allied offenses of similar import, the substantive basis of the second assignment of error, and further argues trial counsel was ineffective in the decision to not object to evidence of prior bad acts, beyond the certified copies of the convictions, the substantive basis of the third assignment of error.

{¶ 57} As held by this court in *State v. Alexander*, 2023-Ohio-2708, ¶ 62-63,

> Pursuant to *Strickland*, a claim of ineffective assistance of counsel first requires a showing that counsel's representation fell below an objective standard of reasonableness. *Bradley* at 142, 538 N.E.2d 373 * * * Trial counsel is entitled to a strong presumption that their conduct falls within the wide range of reasonable professional assistance, with a highly deferential scrutiny of counsel's representation. *Bradley* at 142, 538 N.E.2d 373 * * * counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance. *Bradley* at 142, 538 N.E.2d 373. Once an error by counsel is demonstrated, the defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Bradley* at 142, 538 N.E.2d 373.

{¶ 58} Given that appellant bases the ineffective assistance of counsel claims in the fourth assignment on the same substantive arguments as set forth in appellant's second and third assignments of error, which this court rejected, we find that appellant cannot demonstrate that the outcome of this case would have been different but for trial counsel's decision to not take actions that we have previously determined to be without merit. We find appellant's fourth assignment of error not well-taken.

**{¶ 59}** On consideration whereof, the judgment of the Williams County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.            _____
                                                       JUDGE

Gene A. Zmuda, J.            

                                       _____
Charles E. Sulek, P.J.                                             JUDGE
CONCUR.

                                       _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.