[Cite as *State v. Irelan*, 2026-Ohio-683.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio

Appellee

v.

Roger P. Irelan

Appellant

Court of Appeals No. WD-25-026

Trial Court No. 2024CR0371

**DECISION AND JUDGMENT**

Decided: February 27, 2026

* * * * *

Paul A. Dobson, Wood County Prosecutor, and
Kristofer Kristofferson, Assistant Prosecutor, for appellee.

Karin L. Coble, for appellant.

* * * * *

**OSOWIK, P.J.**

{¶ 1} This is an appeal of an April 29, 2025 judgment of the Wood County Court

of Common Pleas, convicting appellant, a Tier III sex offender, following a two-day jury

trial, on one count of failure to provide notice of change of address, in violation of R.C.

2950.05(F)(1), a felony of the third degree.  Appellant was classified as a sexual predator

following a 2005 gross sexual imposition conviction in Henry County, triggering lifetime sex offender registration requirements, now encompassed by Tier III sex offender registration requirements.

{¶ 2} Appellant was sentenced to a mandatory three-year term of incarceration, pursuant to R.C. 2950.99(A)(2)(b), due to prior convictions of the same offense, in addition to a two-year term of incarceration on the underlying offense, ordered to be served concurrently, for a total three-year term of incarceration. For the reasons set forth below, the judgment of the trial court is hereby affirmed.

{¶ 3} Appellant, Roger P. Irelan, sets forth the following sole assignment of error:

"The verdict was unsupported by sufficient evidence and was[,] therefore[,] a violation of due process []; the verdict is also against the manifest weight of the evidence.

*Case Background*

{¶ 4} The following undisputed facts are relevant to this appeal. In July, 2025, upon receipt of an anonymous tip, the Wood County Sheriff's Office ("WCSO") launched a two-month investigation to determine whether or not appellant was residing at the address that he had provided to the WCSO, pursuant to his Tier III sex offender registration requirements, a Love's Truck Stop in Wood County.

{¶ 5} The anonymous tip suggested that appellant was actually living at 520 Prouty Ave. in Toledo, the address where it is undisputed that appellant's wife and step-daughter live. In conjunction, appellant previously checked with the WCSO on the legality of him living at 520 Prouty Ave. WCSO informed appellant that it was not a

2.

lawful location for him to reside, because it is located within 1000 feet of an elementary school, in violation of R.C. 2950.034.

{¶ 6} Detective Miller of the WCSO was assigned to conduct the investigation into whether appellant's place of residence was the Wood County Love's Truck Stop, as had been claimed by appellant, or, alternatively, 520 Prouty Ave. in Toledo. Miller conducted surveillance in an unmarked vehicle on 15 separate occasions, occurring from July through September of 2024, at 520 Prouty Ave. in Toledo and at Love's Truck Stop.

{¶ 7} During the course of Miller's investigation, appellant's car was present at 520 Prouty Ave. during each of the 15 instances of surveillance conducted by Miller. Miller conducted surveillance at varying times, and appellant's vehicle was always present. Miller photographed both appellant and appellant's vehicle at 520 Prouty Ave., and the 28 photographs taken by Miller documenting these observations were admitted into evidence. Conversely, Miller never observed appellant or appellant's vehicle at Love's Truck Stop during the investigation.

{¶ 8} Miller also utilized the FLOCK camera system to track appellant's vehicle. The FLOCK camera hits on appellant's vehicle uniformly reflected that it was located in the vicinity of 520 Prouty Ave. Conversely, no FLOCK camera hits showed appellant's vehicle located in the vicinity of the Love's Truck Stop.

{¶ 9} Based upon the upon-detailed investigatory findings, Miller concluded that appellant was residing at 520 Prouty Ave. in Toledo, and not at the Love's Truck Stop, as appellant had represented to the WCSO pursuant to his registration requirements.

3.

*Procedural History*

{¶ 10} On September 19, 2024, appellant was indicted on two counts of failure to provide notice of change of address, in violation of R.C. 2950.05(F)(1), the first count being a felony of the fourth degree and the second count being a felony of the third degree.

{¶ 11} Efforts to resolve the matter voluntarily were unsuccessful. On April 28, 2025, a two-day jury trial commenced. At the onset of the trial proceedings, appellee dismissed the first count and reclassified Count 2 as Count 1. The State presented testimony from three principal witnesses; Sergeant Snowberger ("Snowberger") of the Adrian Police Department, Deputy Holland ("Holland") of the WCSO, and Detective Miller ("Miller") of the WCSO. Appellant and his wife testified on his behalf. The jury unanimously found appellant guilty on the sole count of failure to provide notice of change of address, in violation of R.C. 2950.05(F)(1), a felony of the third degree. Appellant was sentenced to a three-year total term of incarceration. This appeal ensued.

*Assignment of Error: Sufficiency and Manifest Weight*

{¶ 12} In the sole assignment of error, appellant alleges that the conviction was not supported by sufficient evidence, and was against the manifest weight of the evidence. We do not concur.

{¶ 13} As set forth by this court in *State v. Costilla*, 2024-Ohio-3221, ¶ 44 - 45 (6th Dist.),

> Appellant challenges both the sufficiency and the weight of the evidence. Sufficiency of the evidence is a term of art for applying the legal standard to determine whether the evidence is legally sufficient to support the

4.

verdict as a matter of law. *Toledo v. Manning*, 2019-Ohio-3405, ¶ 13 (6th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The test for sufficiency is one of adequacy, or whether the evidence, if believed, can sustain the verdict as a matter of law. *Manning* at ¶ 12, citing *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 132. The sufficiency standard applies to the prosecution's burden of production at trial. *State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 26.

The test of manifest weight of the evidence, on the other hand, applies to the prosecution's burden of persuasion. *Messenger* at ¶ 26. A challenge to a conviction based on the manifest weight of the evidence questions whether the trial court could find a greater amount of credible evidence was admitted at trial to sustain that decision than not. *Manning* at ¶ 41, citing *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, citing *Thompkins* at 387, 678 N.E.2d 541. In reviewing a verdict against the manifest weight of the evidence, we give deference to the trial court's credibility determinations, and the testimony of a single witness, if believed, will support a conviction. *Manning* at ¶ 41-42, citing *Myers*, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 140-141.

*Testimony of Snowberger*

{¶ 14} The State first presented the testimony of Sergeant Snowberger of the Adrian Police Department. Snowberger testified to her eight years of training and experience in law enforcement. Snowberger next testified regarding a June 29, 2024, in-person interaction that she had with appellant, directly related to his place of residence. The interaction was captured on Snowberger's body camera, and the video footage was admitted into evidence.

{¶ 15} Upon direct inquiry, "On that day [June 29, 2024] did you have occasion to come into contact with [appellant]?", Snowberger replied, "Yes. . .[appellant] was attempting to get his daughter [for visitation] from the mother's house [in Adrian]. . .[T]he stepfather and mother did not want to let her go because they did not have a good address as to where the daughter was going to be [staying with appellant]."

5.

{¶ 16} Upon direct inquiry, "Did [appellant] give an address [as to where they would all be staying during the daughter's visitation]?", Snowberger replied, "Yes. . .520 Prouty Ave. in Toledo."

{¶ 17} In the corresponding body camera footage of the exchange, as pertinent to appellant's place of residence, Snowberger asks appellant and his wife, "Where will [appellant's daughter] be during this visit?", to which appellant replies, "520 Prouty Ave." Snowberger next asks them, "Whose house is this?", to which appellant's wife replies?", "Ours." Snowberger then turns to appellant and asks, "Yours?", to which appellant replies, "Yeah."

{¶ 18} Upon direct inquiry from the court following viewing of the video footage, "Was [any other address] given [by appellant] to you [other than 520 Prouty Ave.]?", Snowberger replied, "No."

*Testimony of Holland*

{¶ 19} The State next presented the testimony of Deputy Holland ("Holland") of the WCSO. Holland first testified regarding her 24 years of employment with the WCSO and her current duties as the deputy responsible for the registration and supervision of sex offenders, including appellant.

Upon direct inquiry, "Why do you supervise [appellant]?", Holland replied,

He is classified as a sexual predator. . .Prior to 2008 he was convicted as a sexual predator and has to register for his lifetime, check in with the Sheriff's office in the county in which he resides every 90 days, and had five days to update an address change. . .[Under the current statutory scheme appellant] is a Tier III sex offender [and has] a lifetime registration [requirement], check in with the Sheriff's office every 90 days, [with] three days to update an address [change].

{¶ 20} Upon direct inquiry, "What are the restrictions on where a sex offender can and cannot live?", Holland replied, "They cannot live within 1000 feet of a school." Upon direct inquiry, "Has [appellant] ever mentioned [to you] a 520 Prouty Ave. Toledo address?", Holland replied, "Yes. . .[appellant gave us] a piece of paper with two addresses on it, and the 520 Prouty Ave. address was listed on that address list. . .The 520 Prouty Ave. address was within 1000 feet of a school [so I informed appellant that] he could not live there."

{¶ 21} Upon direct inquiry, "How did you, then, [subsequently] become suspicious that [appellant] was residing at that [520 Prouty Ave.] address [after telling him that he could not do so]?", Holland replied, "I received an anonymous tip. . .[I subsequently initiated WCSO surveillance of 520 Prouty Ave. and Love's Truck Stop]."

*Testimony of Miller*

{¶ 22} The State next presented the testimony of Detective Miller ("Miller") of the WCSO. Miller testified to his 27 years of service with the WCSO and his training and experience related to same. Miller next testified that he was assigned to investigate whether or not appellant was residing at 520 Prouty Ave. in Toledo, an address that appellant had proposed to the WCSO, but was informed that it was located too close to an elementary school and was, therefore, prohibited. Appellant then furnished the Love's Truck Stop in Wood County to the WCSO as his address.

{¶ 23} Upon direct inquiry, "Holland from the [WCSO] asked you to investigate [appellant]?", Miller replied,

[S]he asked me to check an address in South Toledo [520 Prouty Ave.] that she had received some information that he may have been living there. . . I'm often mobile in the car, I work from my vehicle. My days normally start in Wood County, but I'm also sworn in in Lucas County and have other task force members that work up that way, so we work as a team. . . .[Holland] knows that I have the opportunity to head to Toledo when needed [during an investigation].

Upon direct inquiry, "Approximately how many times did you conduct surveillance on 520 Prouty Avenue?", Miller replied, "Roughly 15. . . I conducted it early morning hours, late morning, early afternoon, and sometimes, maybe a little later. I. . . varied the times of the day. . . to give a little broader picture of who was there and who was not there. . .I [always] observed [appellant's] white Chevy Traverse [at 520 Prouty Ave.]."

{¶ 24} Upon direct inquiry, "Was there ever a time when you drove by that [appellant's] white Chevy Traverse was not parked outside [of 520 Prouty Ave.]?", Miller replied, "[N]o." Miller further testified, "I did see [appellant] outside on one occasion. Actually, possibly two [occasions]." Miller then testified that he also checked for appellant's vehicle at the Love's Truck Stop in Wood County, but never observed it at that location.

{¶ 25} Upon direct inquiry regarding FLOCK surveillance of appellant's vehicle, Miller testified, "I didn't have a ton of FLOCK hits on it. What I did have were [all] west of I-75. . . in the [South Toledo] area [where 520 Prouty Ave. is located]. I didn't [have] any hits that were east of I-75 [where Love's Truck Stop in located.]" The State rested.

8.

*Testimony of Angela Irelan*

{¶ 26} Appellant first presented the testimony of Angela Irelan ("Angela"), his current wife. Angela testified regarding the incident in Adrian, when they were picking up appellant's daughter for visitation. Upon direct inquiry, "Do you remember last June 29th, 2024, when you were in Adrian. . . Do you remember being interviewed by. . .Officer Snowberger?", Angela replied, "Yes. . .[I told her] that me and my daughter lived at 520 Prouty Ave."

{¶ 27} Incongruously, despite just testifying that she lives at 520 Prouty Ave., upon direct inquiry, "Do you stay with [appellant] at night?", Angela replied, "Yes. . .at the Flying J. Truck Stop in Perrysburg." Flying J. was not the location listed by appellant with the WCSO as his residence. That location was the Love's Truck Stop.

*Testimony of Appellant*

{¶ 28} Appellant next testified on his own behalf. Appellant first acknowledged that 520 Prouty Ave. in Toledo is the residence of his wife and that he is regularly present at that location. Appellant further acknowledged regularly showering at, and having his vehicle at, 520 Prouty Ave. Nevertheless, appellant denied living at that location. Upon direct inquiry, "Where do you stay at night?", appellant replied, "Out at - - Pilot, slash that, Flying J. Truck Stop." Pilot and Flying J. were not listed by appellant with the WCSO as his residence. That location was the Love's Truck Stop.

{¶ 29} Thus, the record shows that appellant listed Love's Truck Stop with the WCSO as his place of residence pursuant to his registration requirements, but appellant

9.

and his wife both incongruously testified at trial that they slept at the Flying J. and/or Pilot Truck Stops.

*Sufficiency and Manifest Weight of R.C. 2950.05(F)(1) Conviction*

{¶ 30} R.C. 2950.05(F)(1) establishes, "No person who is required to notify a sheriff of a change of address pursuant to division (A) of this section or a change in vehicle information or identifiers pursuant to division (D) shall fail to notify the appropriate sheriff in accordance with that division."

{¶ 31} We have carefully reviewed and considered the record of evidence, paying particular scrutiny to the transcripts of the trial proceedings, and the accompanying photographic and body camera video footage evidence submitted into evidence at trial.

{¶ 32} The record reflects that the State presented undisputed evidence that, following the receipt of an anonymous tip, law enforcement investigation subsequently determined that appellant, a Tier III sexual offender, had provided the WCSO with the address of Love's Truck Stop in Perrysburg as his residential address, but appellant was actually residing at 520 Prouty Ave. in Toledo and failed to notify the WCSO of same.

{¶ 33} Miller's undercover surveillance of 520 Prouty Ave. in Toledo, an address that appellant himself had previously suggested to the WCSO, but was rejected by the WCSO due to being within 1000 feet of an elementary school, showed that on each of the 15 occasions of surveillance, occurring at varying times, appellant's vehicle was always present at 520 Prouty Ave. Appellant himself was observed and photographed at 520 Prouty Ave. by Miller. Miller never observed appellant's vehicle at the Love's Truck

10.

Stop. FLOCK hits on appellant's car during the investigation always showed it in the vicinity of 520 Prouty Ave., not at the Love's Truck Stop.

{¶ 34} In addition, Snowberger's undisputed testimony showed that on June 29, 2024, appellant himself provided law enforcement in Adrian with 520 Prouty Ave. in Toledo as his address. This exchange was captured on Snowberger's body camera. The video footage clearly shows appellant affirm to Snowberger that 520 Prouty Ave. was his address. Appellant provided no other address to Snowberger.

{¶ 35} In conjunction, the unsupported testimony of appellant and his wife inconsistently maintained that during the relevant timeframe they spent each night together in a vehicle, with appellant's wife testifying they would park at Flying J, and appellant testifying that they parked at Pilot, then correcting himself to Flying J, neither of which is in conformity with the address appellant provided to the WCSO, Love's.

{¶ 36} Based upon the foregoing, we find ample, undisputed evidence in the record demonstrating that appellant failed to notify WCSO that he was residing at 520 Prouty Ave. in Toledo. We find that appellee satisfied the burden of production demonstrative of appellant's violation of R.C. 2950.05(F)(1).

{¶ 37} Lastly, we further find that a greater amount of credible evidence was admitted at trial to sustain the verdict then not. The undisputed, consistent evidence of Snowberger, Holland, Miller, the FLOCK report, and the body camera footage, all weigh clearly in favor of finding that appellee also satisfied the burden of persuasion, demonstrative of appellant's violation of R.C. 2950.05(F)(1). The testimony of a single of the State's witnesses, if believed, supports appellant's conviction.

11.

{¶ 38} Accordingly, we find that appellant's conviction was supported by sufficient evidence, and was not against the manifest weight of the evidence.

{¶ 39} Therefore, we find appellant's assignment of error not well-taken. The judgment of the Wood County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.
_____
JUDGE

Gene A. Zmuda, J
_____
JUDGE

Myron C. Duhart, J
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.